UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOTAL E&P USA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:16-cv-02674 |
| v. | § | |
| | § | JUDGE DAVID HITTNER |
| MARUBENI OIL & GAS USA, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF TOTAL E&P USA, INC.'S MOTION PURSUANT TO FED. R. CIV. P. 56(d) TO DENY OR DEFER DEFENDANT MARUBENI OIL & GAS (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff TOTAL E&P USA, Inc. ("TEP USA") moves the Court pursuant to Fed. R. Civ. P. 56(d) to deny or defer Defendant/Counter-Plaintiff Marubeni Oil & Gas (USA), Inc.'s ("MOGUS") Motion for Partial Summary Judgment on Liability Under the MC 305 Operating Agreement [Doc. 25] (the "Motion") filed on December 9, 2016. This Rule 56(d) Motion is supported by the Declaration of Michael W. Mengis ("Mengis Decl."), which is attached hereto as **Exhibit A**.

## I.     NATURE & STAGE OF THE PROCEEDING

On December 9, 2016, before any discovery has been obtained in this case, MOGUS filed a premature motion for partial summary judgment on liability [Doc. 25]. MOGUS's Motion attempts to oversimplify the issues in the case and ignores genuine issues of material fact that are essential to the outcome of this case which

need to be developed through discovery. Consideration of MOGUS's Motion now would be inconsistent with the Rules relating to Summary Judgment procedure.

TEP USA has not had <u>any</u> opportunity to conduct discovery regarding facts essential to the outcome of this case and its opposition to MOGUS's Motion. For example, TEP USA has had no involvement with the wells located in Mississippi Canyon 305 ("MC 305") since 2006, nor any involvement with the decommissioning activities at issue. At this early stage of the case, MOGUS knows everything about the decommissioning of the MC 305 Wells and whatever steps it took in performing the decommissioning, and TEP USA knows virtually nothing. The scheduling conference in this case was just held on November 10, 2016, and TEP USA served on MOGUS its First Interrogatories and First Requests for Production of Documents on December 2, 2016 and its First Request for Admissions on December 6, 2016. *See* Mengis Decl., at ¶¶ 1-3. MOGUS's responses to TEP USA's initial discovery requests are not due until January 3 and January 5, 2017, respectively, which is after the current deadline of January 20, 2017 for TEP USA to file its response in opposition to the Motion. But there is simply not enough time for TEP USA to review and analyze MOGUS's discovery responses and accompanying document production prior to the briefing deadlines even if further discovery is unnecessary. In addition, pursuant to the Docket Control Order entered in this case, the trial term for this matter is not scheduled

until January/February **2018 – over one year from now**. At this time, TEP USA has not had the opportunity to discover evidence regarding the material facts essential to its opposition to the Motion.

## II.    STATEMENT OF THE ISSUES & STANDARD OF REVIEW

The issue is whether MOGUS may obtain partial summary judgment at this stage of the case, especially when no discovery has been conducted.  MOGUS has failed to provide TEP USA with all of the documents referenced in its initial disclosures (despite TEP USA's requests), and there are significant factual issues that must be developed with respect to whether MOGUS has any rights against TEP USA.

Summary judgment should be refused where the opposing party has not had the opportunity to discover information that is essential to its opposition. *See*, *e.g.*, *Winfrey v. San Jacinto Cnty.*, No. 11-20555, 481 Fed. App'x 969, 982-983 (5th Cir. July 27, 2012) (reversing grant of summary judgment because evidence was inadequate on material issue and non-moving party had not had a "full and fair opportunity" to conduct discovery); *Fennell v. Quintela*, No. 07-50986, 393 Fed. App'x 150, 155 (5th Cir. Aug. 25, 2010) (trial court erred by denying Rule 56 continuance because non-moving party had not had "full and fair" opportunity to discover essential evidence). Moreover, the court has "broad authority to fashion the appropriate relief necessary when a nonmovant demonstrates to the court that it

needs additional discovery before responding to a summary judgment motion."
David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal
Practice*, 46 HOUS. L. REV. 773, 938 (2015) (citation omitted).

> Federal Rule of Civil Procedure 56(d) provides as follows:

>> If a nonmovant shows by affidavit or declaration that, for
>> specified reasons, it cannot present facts essential to
>> justify its opposition, the court may: (1) defer considering
>> the motion or deny it; (2) allow time to obtain affidavits
>> or declarations or to take discovery; or (3) issue any other
>> appropriate order.

The protection afforded by Rule 56(d) is an "essential ingredient of the
federal summary judgment scheme." *Parakkavetty v. Indus. Int'l, Inc.*, No. 3:02-
CV-1461-D, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.)
(discussing Rule 56(f)[1]). It is an alternative to a response in opposition to summary
judgment under Rule 56(e) and is designed to safeguard against a premature or
improvident grant of summary judgment. *Washington v. Allstate Ins. Co.*, 901 F.2d
1281, 1285 (5th Cir. 1990); *see also Wichita Falls Office Assocs. v. Banc One
Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("The purpose of Rule 56([d]) is to
provide non-movants with a much needed tool to keep open the doors of discovery
in order to adequately combat a summary judgment motion."); *Int'l Shortstop, Inc.
v. Rally's, Inc.*, 939 F.2d 1257, 1268 (5th Cir. 1991) ("[T]he district court should

---

[1] Rule 56(f) has been recodified "without substantial change" as Rule 56(d).  *See*
Fed. R. Civ. P. 56 advisory committee's note; *Sapp v. Mem'l Hermann Healthcare
Sys.*, 406 F.Appx. 866, 869 (5th Cir. 2010).

have allowed Shortstop to complete discovery before proceeding to rule on Rally's motion. Summary judgment is a lethal weapon. We must afford prospective victims some protective armor if we expect them to properly defend against it."). Rule 56(d) provides a remedy where a party has had "insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Union City Barge Line, Inc. v. Union Carbide Corp*., 823 F.2d 129, 136 (5th Cir. 1987); *see also Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006).

Rule 56(d) motions are "broadly favored and should be liberally granted." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). They are appropriate where the nonmovant has "(i) requested extended discovery prior to the court's ruling on summary judgment; (ii) placed the district court on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to the district court with reasonable specificity how the requested discovery pertained to the pending motion." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (citations omitted). However, "[t]echnical, rigid scrutiny of a Rule 56([d]) motion is inappropriate." *Union City Barge Line*, 823 F.2d at 136. **Moreover, the burden is less on the nonmovant when no discovery has been conducted.** *See* Wagstaffe, et al., Prac. Guide Fed. Proc. Before Trial (Nat Ed.) (The Rutter Group 2016) ¶ 14:114.10, p. 14-40 ("A lesser showing of

specificity may be allowed *before any discovery has taken place*, because the party making a Rule 56(d) motion 'cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid.'") (quoting *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.2d 767, 774 (9th Cir. 2003)). On appeal, the denial of a Rule 56(d) motion is reviewed for abuse of discretion. *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (per curiam).

## III.   SUMMARY OF THE ARGUMENT

MOGUS's Motion is premature because TEP USA has not had an opportunity to discover controverting evidence, which it believes exists, as to the material facts necessary to oppose MOGUS's Motion. It is particularly important for TEP USA to obtain discovery and depositions from MOGUS since TEP USA has not been involved in the MC 305 since 2006. MOGUS holds all of the information related to the MC 305 since that time, including but not limited to all information related to their decommissioning. As discussed below, there are numerous threshold and material disputed facts at issue that not only require discovery but go to the heart of MOGUS's claims. TEP USA has not delayed in seeking discovery from MOGUS but served MOGUS with written discovery requests on December 2, and 6, 2016. More specifically, TEP USA will need to

6

conduct discovery and depositions on the material facts related to the purported contractual obligation owed by TEP USA to MOGUS, and MOGUS's conduct and dealings, including with third parties, in order to fully respond and defeat MOGUS's Motion.

## IV.   ARGUMENT

### A.   There are numerous disputed facts at issue which cannot be resolved through the documents in the record, and which are essential to the outcome of this case.

MOGUS has not met its burden of proving there are no genuine issues of material fact. There are numerous, essential factual issues in dispute, which cannot be resolved given the documents in the current record. In fact, nowhere in MOGUS's Motion does MOGUS affirmatively assert that it is the Operator as that term is defined in the Operating Agreement[2], which is essential in order for MOGUS to enforce the terms of the Operating Agreement. This omission exemplifies the glaring lack of factual clarity in this case. A list of essential, disputed facts which are necessary to resolve either MOGUS claims, including its

---

[2] "Operating Agreement" refers to the May 1, 1998 Operating Agreement Outer Continental Shelf Aconcagua Prospect Mississippi Canyon Area Block 305. The original parties to the Operating Agreement include TEP USA's predecessor-in-interest Elf Exploration, Inc., Mariner Energy, Inc., and Pioneer Natural Resources, Inc.

contractual claims, and/or TEP USA's affirmative defenses[3] are attached here to at Exhibit A, ¶ 9.[4]

Obviously MOGUS's conduct may determine and have an effect on liability, but TEP USA has had no meaningful involvement in the MC 305 Wells since 2006, and no opportunity to conduct discovery.

## B. TEP USA needs discovery from MOGUS related to the disputed facts essential to MOGUS's contract claims.

As discussed *supra*, Federal Rule of Civil Procedure 56(d) provides a remedy where a party has had "insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Union City Barge Line, Inc.*, 823 F.2d at 136. The burden on the nonmovant to make a particularized showing of the necessary discovery is lessened when no discovery has taken place[5]. *See* Wagstaffe, et al., Prac. Guide Fed. Proc. Before Trial (Nat Ed.) (The Rutter Group 2016) ¶ 14:114.10, p. 14-40. Such a remedy is particularly appropriate here where no discovery has taken place, MOGUS has failed to even provide TEP USA with all the documents referenced in its Initial Disclosures, and

---

[3] *See* Mengis Decl., at ¶ 9. TEP USA's affirmative defenses are set forth in its Answer and Affirmative Defenses to MOGUS's Counterclaim, Doc. 18.
[4] Unless otherwise defined herein, capitalized terms used in this pleading are as defined in TEP USA's discovery requests, attached as Exhibits 1-3 to Mengis Decl.
[5] TEP USA has served written discovery requests on MOGUS, as discussed *supra* p. 2, but no response has been received.

MOGUS is in possession of all the documents and information since TEP USA has not been involved with the MC 305 since 2006. *See Culwell*, 468 F.3d at 873.

MOGUS asks the Court to make two findings as a matter of law: one as to the existence of a valid and binding contract between MOGUS and TEP USA (*i.e.*, TEP USA's contractual obligation pursuant to the terms of the Operating Agreement), and another as to TEP USA's liability for breach of that contract (*i.e.*, the Operating Agreement). However, there are outstanding facts that are necessary to the threshold question of whether there is a valid contract in place. Instead, both arguments ignore standard contract-law basics requiring a claimant to establish a *prima facie* case before liability can be determined as a matter of law. Accordingly, TEP USA must conduct discovery into these contractual issues, which determine the outcome of MOGUS's claims and are also essential for TEP USA to fully respond to MOGUS's Motion.

As an initial matter, MOGUS's Motion was filed so early in the case that the record lacks the facts necessary for MOGUS to analyze what law applies in this case. *See* Doc. 25, at 9-11. Instead, MOGUS states that, while the Operating Agreement selects federal and Texas law, such a selection may be unenforceable due to the Outer Continental Shelf Lands Act's ("OCSLA") mandatory choice of law provision. *Id.* at 10. MOGUS lists the factors a court will use to determine which law applies, but then states that since the potential contract interpretation

principles are similar the result will be the same. *Id*. It is not surprising that the record lacks the facts necessary to conduct the choice of law analysis since discovery has only just begun and the trial term in this case is not set until January/February 2018.

### C. TEP USA must conduct discovery as to the existence of a contractual relationship between MOGUS and TEP USA because such a relationship is outcome determinative.

In order to prevail on its Motion, MOGUS must show it is either a party to the agreement, or a third-party beneficiary. MOGUS must also show that it has fulfilled its own obligations under the Operating Agreement, or if it has failed to do so, why that does not excuse TEP USA's performance. Finally, although MOGUS asserts that the terms of the Operating Agreement are unambiguous, TEP USA disagrees, and when an ambiguity exists, the surrounding circumstances and intent of the parties determines the meaning. TEP USA should be allowed the opportunity to conduct discovery into these threshold facts pertaining to contract interpretation fundamentals before it is required to defend against a premature partial summary judgment motion.

In order to establish that there has been a breach of a contract, there must be a showing of the existence of a contract between the parties. *See Pegasus Energy Group, Inc. v. Cheyenne Petrol. Co.*, 3 S.W.3d 112 (Tex. App.—Corpus Christi 1999, pet. denied); *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009);

*Stanton v. Tulane Univ. of Louisiana*, 00-0403, p. 12 (La. 4 Cir. 1/10/01); 777 So. 2d 1242, 1249 ("[i]n order to prevail on a breach of contract claim, [plaintiff] must first prove the existence of a contract"). TEP USA has requested discovery pertinent to these threshold factual issues. On December 2, 2016, TEP USA served MOGUS with Requests for Production and Interrogatories[6]. On December 6, 2016, TEP USA served MOGUS with Requests for Admissions[7]. These discovery requests, in part, seek discovery on MOGUS's factual basis for claiming that (1) it was either a party to the agreement, or a third-party beneficiary, (2) it has fulfilled its own obligations under the Operating Agreement, or if it has failed to do so, why that does not excuse TEP USA's performance, and (3) although MOGUS asserts that the terms of the contract are unambiguous, TEP USA disagrees, and when an ambiguity exists, the surrounding circumstances and intent of the parties determines the meaning.

    1.    A disputed fact exists as to whether or not MOGUS is either a party to the Operating Agreement, or a third-party beneficiary.

As a threshold matter, MOGUS is not and has not claimed to be a signatory or party to the Operating Agreement. Instead, MOGUS alleges that TEP USA is

---

[6] True and accurate copies TEP USA's First Request for Production of Documents and First Set of Interrogatories are attached as <u>Exhibit 1</u> and <u>Exhibit 2</u>, respectively, to the Declaration of Michael W. Mengis ("Mengis Decl."), attached hereto as Exhibit A.

[7] A true and accurate copy of TEP USA's First Requests for Admission is attached as <u>Exhibit 3</u> to Mengis Decl., attached hereto as Exhibit A.

contractually obligated to reimburse MOGUS for decommissioning expenses yet never establishes that it is a party, or even a third-party beneficiary, to the Operating Agreement and entitled to enforce its terms. As a result, TEP USA has sought discovery on whether or not MOGUS became the Operator pursuant to the terms of the Operating Agreement. For example, in its First Request for Production of Documents[8], TEP USA has asked MOGUS to produce documents and communications relating to (1) MOGUS's decision to become the designated operator[9] of MC 305 pursuant to the Final Order entered in the ATP Bankruptcy, and (2) MOGUS purporting to act and becoming designated as "Operator" pursuant to the Operating Agreement (Req. Nos. 32-34, 37)[10].

These document requests will only begin to provide TEP USA with the information it needs to resolve the factual issue of whether or not MOGUS was a party to or a third-party beneficiary of the Operating Agreement and, as a result, is entitled to enforce its terms. Establishing these facts is necessary to the outcome of this case, and these specific facts are essential to TEP USA's response to MOGUS's Motion. MOGUS has never affirmatively stated that it is the "Operator"

---

[8] *See* Exhibit 1 to Mengis Decl., attached hereto as Exhibit A.

[9] The term "Operator" differs from the term "operator" since the former is defined under the Operating Agreement, while the latter is not and is used for the purposes of the Final Order entered in the ATP Bankruptcy.

[10] The specific requests discussed in TEP USA's motion are referenced as examples and do not represent the entirety of discovery that TEP USA needs on the various factual disputes in order to respond to MOGUS's Motion.

pursuant to and as defined by the terms of the Operating Agreement, yet it seeks to enforce the Operating Agreement's terms and benefit from certain provisions contained therein. Discovery on the issue of whether or not there is a valid and binding contract between TEP USA and MOGUS is a threshold issue and essential to the outcome of this case. Additional written discovery and deposition testimony will likely be necessary to resolve this factual dispute.[11]

> 2. Disputed facts exist as to whether or not MOGUS has fulfilled its own obligations under the Operating Agreement and this issue is essential to the outcome of the case.

In addition, TEP USA needs information and documents related to whether or not MOGUS has fulfilled its own obligations under the Operating Agreement that it is purportedly trying to enforce. *See* Mengis Decl., at ¶ 8-9. As a general rule, a party who fails to perform its obligations under a contract may not thereafter enforce the remaining terms of the contract against another party. *Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259 (Tex. App.—San Antonio 2001, pet. denied); *Nationwide Mut. Ins. Co. v. Clay,* 525 So.2d 1339, 1343 (Ala. 1987); *Andrew Dev. Corp. v. West Esplanade Corp.*, 347 So. 2d 210, 212-13 (La. 1977). Thus, a defaulting party cannot maintain a suit for breach of contract. *D.E.W., Inc. v. Depco Forms, Inc.*, 827 S.W.2d 379 (Tex. App.—San Antonio 1992, no writ); *Gray v. Reynolds,* 553 So.2d 79, 82 (Ala. 1989); *Godchaux v.*

---

[11] *See* Mengis Decl., at ¶ 13.

*Chicago Lumbar & Coal Co.*, 131 La. 112, 114; 59 So. 33, 34 (1912). In its Requests for Production, TEP USA requested documents concerning whether or not MOGUS fulfilled its own obligations under the Operating Agreement. For example, TEP USA requested (1) all invoices and AFEs as well as all notices and communications sent to any other party regarding the decommissioning of MC 305, (2) all documents related to any written notice of proposal to abandon the MC 305, and (3) all documents related to MOGUS purporting to act as "Operator" or becoming designated "Operator" of MC 305 pursuant to the Operating Agreement (Req. Nos. 10-12, 23-25, 30-31, 33-34, 37).

Further, TEP USA served Requests for Admissions on MOGUS which will also help to resolve the disputed factual issue of whether or not MOGUS complied with the necessary terms of the Operating Agreement. TEP USA asked MOGUS to admit that (1) neither TEP USA nor any of the Participating Parties approved a single AFE in connection with the decommissioning of the MC 305, (2) decommissioning of MC 305 was not performed under the express terms of the Operating Agreement, (3) MOGUS did not provide advance notice of its proposal nor did it receive unanimous approval from nor provide an estimate of costs to decommission the MC 305 to the Participating Parties, and (4) MOGUS has not taken actions as the "Operator" pursuant to the Operating Agreement (Req. Nos. 2-3, 5, 15-19, 29).

14

Finally, TEP USA served Interrogatories that seek information about whether or not MOGUS complied with the terms of the Operating Agreement. For example, TEP USA asked MOGUS to describe fully and in complete detail each instance where MOGUS fully complied with the terms of the Operating Agreement, as alleged in its Counterclaim (Interrog. No. 6).

MOGUS has not only failed to establish (or even claim) that it is a party or third-party beneficiary entitled to enforce the terms of the Operating Agreement, but it has also failed to establish that, if it can enforce the terms of the Operating Agreement, it complied with the necessary obligations under the Operating Agreement to do so. TEP USA must conduct discovery concerning the capacity in which MOGUS conducted decommissioning operations. On its face, the petition and motion show MOGUS responded to a demand from BSEE, a direct MOGUS obligation. No discovery has been conducted on how this direct MOGUS obligation can be enforced against anyone else, let alone TEP USA. Since these are outcome determinative issues, MOGUS's Motion should be denied or deferred to allow discovery in this case to commence.

3.    The contract is ambiguous and discovery is needed to resolve factual issues related to the parties' intent.

Finally, TEP USA disputes that the Operating Agreement language is unambiguous. Indeed, MOGUS's entire theory of liability is based on the argument that outside federal regulations are imported into the agreement, despite the

absence of a provision expressly incorporating them into the agreement. When an ambiguity exists, the Court must look beyond the four corners of the agreement, in which case the surrounding circumstances including the practical construction put on the language of the agreement by the parties to the agreement are relevant to the analysis. *See Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252 (Tex. App.— Houston [14th Dist.] 2003, pet. denied); *McCollough v. Regions Bank*, 955 So.2d 405, 410 (Ala. 2006); La. Civ. Code Ann. art. 2048; *McCrory v. Terminex Service Co., Inc.*, 609 So. 2d 883, 885 (La. 4th Cir. 1992). Such an examination will, necessarily, involve factual issues that need to be explored. For example, TEP USA has inquired into MOGUS's intent by requesting that MOGUS produce documents relating to (1) MOGUS's decision to become the designated operator of MC 305 pursuant to the Final Order, (2) evidencing MOGUS's plans for the MC 305, (3) any minutes or resolutions of the MOGUS Board of Directors during which the ATP Bankruptcy, Final Order, or continued use or decommissioning of the MC 305 was discussed, and (4) any financial reserve by MOGUS related to the decommissioning of MC 305 (Req. Nos. 32, 35-36, 39, 49).

The above-listed discovery, as well as other related discovery requests, will help resolve material factual issues related to the intent of the parties and whether the parties intended to import federal regulations into the Operating Agreement when no such provision expressly incorporates the regulations. *See* Doc. 25, at 16-

16

17. In addition, an ambiguity exists as to whether MOGUS was obligated to obtain TEP USA's approval prior to commencing the decommissioning of the MC 305. Accordingly, TEP USA has sought discovery that relates to MOGUS' intent through Requests for Admission asking MOGUS to admit that TEP USA and/or the Participating Parties did not approve a single AFE related to the decommissioning or receive advance notice or unanimous approval of MOGU's proposal to decommission the MC 305 (Req. Nos. 2-3, 15-17).

By way of example, TEP USA has also requested that MOGUS produce all invoices and AFEs as well as all documents related to all AFEs for the decommissioning of the MC 305 (Req. for Prod. Nos. 10-12). The above-listed discovery requests will start to resolve the ambiguity of whether MOGUS was obligated, pursuant to the terms of the Operating Agreement, to obtain TEP USA's approval prior to commencing the decommissioning of the MC 305.[12] Accordingly, MOGUS's Motion should be denied or deferred so that discovery may commence.

---

[12] *See Apache Corp. v. W&T Offshore, Inc.*, Civil Action No. H-15-0063, (S.D. Tex. Oct. 7, 2016) (holding that clauses prohibiting certain expenditures without approved AFEs with virtually identical language to the clause at issue in this case was ambiguous and thus there was "a material question of fact as to the parties' intent.") (Hittner, J.).

4.     A genuine issue of material fact exists as to whether MOGUS performed its purported contractual obligations in good faith.

To the extent Louisiana law is deemed to apply, all contracts must be performed in good faith. *See* La. Civ. Code art. 1759 ("Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."). Moreover, the Louisiana Civil Code expressly bars the recovery of damages where a claimant's bad faith causes the obligor's failure to perform. La. Civ. Code art. 2003. As a result, there is a genuine issue of material fact regarding whether or not MOGUS performed its purported contractual obligations and the decommissioning in good faith. TEP USA has sought discovery on this essential issue, and these facts must be established to resolve this case. Specifically, TEP USA requested that MOGUS to provide documents relating to any solicitation of competitive bids, project management, and all steps taken by MOGUS to access the ATP abandonment fund established by the Final Order for the decommissioning of the MC 305 (Req. Nos. 13-14, 17-18, 40-41).

By way of further example, TEP USA has also sought this information through its First Set of Interrogatories by asking MOGUS to describe fully and in complete detail any competitive bidding process used to estimate costs and award contracts for work performed on the decommissioning of the MC 305 (Interrog. No. 12). The above-listed discovery will help to determine whether or not MOGUS

performed its purported contractual obligations and the decommissioning in good faith, which is necessary for MOGUS to recover under Louisiana law.

### D. Discovery as to TEP USA's purported breach of the Operating Agreement is essential to this case.

MOGUS has alleged that TEP USA breached the Operating Agreement by "failing to pay MOGUS its proportionate share of decommissioning costs and expenses." Doc. 25, at 22. However, there is a genuine issue of material fact as to whether or not TEP USA was released from any of its obligations under the Operating Agreement as a result of the Final Order entered in ATP's Bankruptcy Proceeding. Accordingly, TEP USA has sought discovery from MOGUS on this essential issue, which is necessary to the outcome of this case (and TEP USA's response to MOGUS's Motion) because if TEP USA was released from any or all of its obligations under the Operating Agreement, MOGUS's claims fail. and needs that discovery in order to respond to MOGUS's Motion. In its Requests for Admission TEP USA asked MOGUS to admit that any claims against ATP for decommissioning of the MC 305 were "forever barred and enjoined" pursuant to the Final Order, and that the Final Order does not create any rights in favor of MOGUS against TEP USA (Req. Nos. 33, 36).

In addition, TEP USA has requested that MOGUS produce documents related to (1) MOGUS's plans for and intended use of the MC 305 after MOGUS became designated as operator pursuant to the Final Order, (2) all minutes or

resolutions of the MOGUS Board of Directors regarding the ATP Bankruptcy, Final Order, or continued use or decommissioning of the MC 305, and (3) any alleged liability of TEP USA for decommissioning of MC 305 (Req. Nos. 35-36, 39, 47).

Accordingly, TEP USA needs to conduct discovery on these case determinative factual issues. As a result, MOGUS's Motion is premature and it should be denied or deferred while the parties participate in the discovery process.

## V.    CONCLUSION

For the foregoing reasons, MOGUS's premature Motion for Partial Summary Judgment should be denied or deferred while the parties conduct the discovery necessary for TEP USA to fully respond to MOGUS's Motion.

Dated:  December 19, 2016

Of Counsel:

**BAKER & HOSTETLER LLP**
L. Poe Leggette
pleggette@bakerlaw.com
cgagnon@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile:  (303) 861-7805

Respectfully submitted,

**BAKER & HOSTETLER LLP**

 */s/ Michael W. Mengis*
Michael W. Mengis (Attorney-in-Charge)
mmengis@bakerlaw.com
State Bar No. 13941040
Erika J. Lindberg
elindberg@bakerlaw.com
State Bar No. 24090231
811 Main St., Suite 1100
Houston, TX 77002-6111
Telephone: (713) 751-1600
Facsimile:   (713) 751-1717

Philip G. Eisenberg
peisenberg@lockelord.com
State Bar No. 24033923
Scott L. Friedman
sfriedman@lockelord.com
**LOCKE LORD LLP**
State Bar No. 24087543
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile:   (713) 223-3717

**ATTORNEYS FOR PLAINTIFF,
TOTAL E&P USA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 19, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.


*/s/ Michael W. Mengis*
Michael W. Mengis