Case 4:16-cv-02674   Document 318   Filed on 04/22/19 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
April 22, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOTAL E&P USA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-CV-02674 |
| | § | |
| MARUBENI OIL & GAS (USA), INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant Marubeni Oil & Gas (USA), Inc. ("MOGUS")'s Motion for Attorneys' Fees and Costs, **(Instrument No. 306)**, and MOGUS's Motion for Prejudgment and Post-Judgment Interest. **(Instrument No. 305)**.

### I.

The Court has subject matter jurisdiction over this case because the asset in dispute, the Mississippi Canyon Block 305 ("MC 305"), is located in the outer Continental Shelf. (*See* Instrument No. 228 at 3). However, because Plaintiff Total E&P USA, Inc. ("Total") and Marubeni Oil & Gas (USA), Inc. ("MOGUS") brought contractual and declaratory judgment claims, Alabama state law applies to their claims. *Id.* at 4, 14. After this Court determined that Total was liable for its proportionate share of costs related to the decommissioning of the MC 305, a jury trial was held to determine the amount of damages owed. (*See* Instrument No. 254 at 19-20 (parties jointly arguing remaining damages issues under Alabama contract law)). "A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Because this case involves

Alabama contract law for the substantive issues, the Court must apply Alabama law in its determination of whether MOGUS is entitled to an award of reasonable attorneys' fees.

With very few exceptions, a party cannot recover attorneys' fees under Alabama law. *CNA Ins. Cos. v. Johnson Galleries of Opelika, Inc.*, 639 So.2d 1355, 1357 (Ala. 1994). One of the exceptions is when the parties' contract provides for an award of attorneys' fees. *Regions Bank v. Lowrey*, 101 So.3d 210, 220 (Ala. 2012). The MC 305 Operating Agreement that is the basis for this breach of contract case entitles MOGUS to recover attorneys' fees, costs, and interest from Total:

> [E]ach Party shall pay its proportion of all bills within fifteen (15) days of receipt date. If payment is not made within such time, the unpaid balance shall bear interest compounded monthly using the U.S. Treasury Bill three month rate plus 3% in effect on the first day of the month for each month that the payment is delinquent or the maximum contract rate permitted by the applicable usury laws in the jurisdiction in which the Joint Property is located, whichever is the lesser, **plus attorney's fees, court costs**, and **other costs** in connection with the collection of unpaid amounts. **Interest** shall begin accruing on the first day of the month in which the payment was due.

(Instrument No. 305 at 2 (citing Def. Trial Ex. 1 at p. 143) (emphasis added)). MOGUS seeks to recover $2,198,333.84 in attorneys' fees. (Instrument No. 306 at 1, 3).

Total opposes MOGUS's request for attorneys' fees, arguing: (1) MOGUS never received Total's approval for the Authorizations for Expenditure ("AFE") in connection with MOGUS's decommissioning work; and (2) MOGUS's recovery, if any, of attorneys' fees and costs should be reduced to reflect its limited success at trial. (Instrument No. 316 at 3-9).

This Court previously found at the summary judgment stage that Total is liable for its proportionate share of the decommissioning costs. MOGUS's failure to provide AFEs to Total is irrelevant to whether Total breached its obligations under the MC 305 Operating Agreement by

2

failing to pay its share of the decommissioning costs. Moreover, Total's citation to the MC 305 Operating Agreement improperly conflates the provision regarding recovery of interest and attorneys' fees with the provision regarding approval of AFEs. The MC 305 Operating Agreement addresses recovery of attorneys' fees and interest in the preceding paragraph of the accounting procedures and does not tie the operator's entitlement to fees and interest to an approved AFE. The Court finds therefore that MOGUS is entitled to recover attorneys' fees under the MC 305 Operating Agreement.

The Court must determine whether MOGUS's requested award of fees is reasonable. In the Fifth Circuit, attorneys' fees have traditionally been calculated using the lodestar method. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). Under the lodestar method, the court calculates the product of the reasonable hours worked by the reasonable hourly rate, and then adjusts this figure by a multiplier in light of the twelve *Johnson* factors.[1] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The process is substantially the same under Alabama law. "If the Court finds that attorney's fees are recoverable, it must then determine the reasonableness of the request. The Alabama Supreme Court has set forth twelve criteria [the "*Peebles* criteria"] that a trial court may consider in setting attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney[s]; (5) the weight of [their] responsibilities; (6) the measure of success

---

[1] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required; (4) the loss of other employment in taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances." *Wachovia Bank, Nat'l Ass'n v. L & H Invs., LLC*, 728 F. Supp. 2d 1307, 1314-15 (M.D. Ala. 2010) (citing *Knox Kershaw, Inc. v. Kershaw*, 598 So.2d 1372, 1374 (Ala. 1992)); *Peebles v. Miley*, 439 So.2d 137, 140-41 (Ala. 1983). "Although all of the criteria set forth [in *Peebles*] must be taken into consideration (though all criteria need not be met) it has been generally recognized that the amount of time consumed should be the first yardstick used by the trial court." *Clement v. Merchants Nat'l Bank of Mobile*, 493 So.2d 1350, 1355 (Ala. 1986).

### A. The *Peebles* Criteria

Although Total opposes an award of attorneys' fees to MOGUS, Total does not dispute MOGUS's lodestar amount, i.e., the product of the hourly rates multiplied by the hours worked. (*See* Instrument No. 316). MOGUS employed two law firms to work on this case: (1) Looper Goodwine P.C. ("Looper Goodwine") and (2) Schonekas, Evans, McGoey & McEachin, LLC ("SEMM"). Looper Goodwine's lodestar calculation based on each of its attorneys and paralegals is as follows:

| Timekeeper | Title | Hours | Average Rate | Total |
|---|---|---|---|---|
| Paul J. Goodwine | Shareholder | 598.968 | $484.99 | $290,495.81 |
| Taylor Mouledoux | Shareholder | 1,082.768 | $384.92 | $416,781.69 |
| Holly Thompson | Member | 266.073 | $384.64 | $102,342.57 |
| Taylor Gay | Associate | 1,028.263 | $331.96 | $341,342.12 |
| Addie Danos | Associate | 1.9 | $400 | $760.00 |
| Lindsey Johnson | Associate | 42.967 | $364.92 | $15,679.58 |
| Samantha Marrone | Associate | 106.667 | $275.72 | $29,410.02 |
| Emile Dreuil | Associate | 35.734 | $291.80 | $10,427.21 |

| Anamaria Palla | Associate | 8.367 | $225 | $1,882.58 |
| Kwame Cain | Associate | 9.5 | $225 | $2,137.50 |
| Mark Nawfal | Associate | 6.2 | $225 | $1,395.00 |
| Robert Denzer | Associate | 25.1 | $253.61 | $6,365.52 |
| John Weathington | Member | 8.8 | $450 | $3,960.00 |
| Tina Acosta | Paralegal | 8.611 | $100 | $861.10 |
| **Total** | | **3,229.918** | | **$1,223,840.70** |

SEMM's lodestar calculation based on each of its attorneys and paralegals is as follows:

| Timekeeper | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Kyle Schonekas | Shareholder | 212.92 | $575.00 | $122,429.00 |
| Joelle F. Evans | Shareholder | 587.97 | $485.00 | $285,165.45 |
| William P. Gibbens | Shareholder | 1.85 | $485.00 | $878.75 |
| Andrea V. Timpa | Associate | 381.50 | $325.00 | $123,989.80 |
| Maria G. Marks | Associate | 429.68 | $325.00 | $139,646.00 |
| Jake K. Weixler | Associate | 103.86 | $325.00 | $33,754.50 |
| Mandie E. Landry | Associate | 367.01 | $325.00 | $119,278.25 |
| Jennifer G. Mann | Associate | 152.32 | $300.00 | $45,696.00 |
| Teva F. Sempel | Associate | 216.32 | $250.00 | $54,080.49 |
| McClain R. Schonekas | Associate | 11.20 | $195.00 | $2,184.00 |
| Ian L. Atkinson | Shareholder | 5.92 | $250.00 | $1,480 |
| Ellie T. Schilling | Shareholder | 9.80 | $250.00 | $2,450.00 |
| Tressa Pankovits | Staff Attorney | 29.62 | $250.00 | $7,405.00 |
| Andi L. Abramson | Paralegal | 160.78 | $130.00 | $20,878.40 |
| Joelle D. Bailey | Paralegal Asst. | 233.50 | $65.00 | $15,177.50 |
| **Total** | | **2,904.25** | | **$974,493.14** |

MOGUS asks the Court to award it $2,198,333.84 in attorneys' fees for both law firms ($1,223,840.70 attributable to Looper Goodwine and $974,493.14 attributable to SEMM), and $629,524.27 in costs. (Instruments No. 306 at 12; No. 306-10 at 7; 306-1 at 7). The Court must next determine whether MOGUS's requested amount is reasonable in light of the *Peebles* criteria.

### 1. Nature and Value of the Subject Matter of the Employment

The services for which MOGUS's counsel seeks compensation were performed with a high-level of skill and were reasonable and necessary for the preparation and trial of MOGUS's

5

case. This multi-million-dollar suit was a complex and technical breach of contract case related to the plugging and abandonment of the MC 305. The case involved bankruptcy law, federal plugging and abandonment regulations, the Outer Continental Shelf Lands Act choice-of-law provisions, oil and gas accounting issues, highly technical operations issues, and predecessor liability. The case culminated in a nine-day jury trial. The nature and complexity of the case, along with the skill and labor required weigh in favor of the reasonableness of the attorneys' fees requested.

### 2. The Learning, Skill, and Labor Required

As discussed above, the case required professional skill with respect to both standard and novel problems encountered in the case. MOGUS's counsel claims that when possible, attorneys delegated certain projects to paralegals and associates to help ensure that the level of skill did not exceed what was required to complete the task. (Instrument No. 306 at 8, 9).

### 3. The Time Consumed

"[I]t is generally recognized that the first yardstick that is used by the trial judges is the time consumed." *Peebles*, 439 So.2d at 141. This Court has considered the time entries and the number of hours expended as well as the supporting documentation MOGUS submitted. While this case overlapped with Total's two separate cases that are in the Southern District of Texas, both Looper Goodwine and SEMM have analyzed each of their monthly invoices to MOGUS and identified time entries and litigation costs directly attributable to only this case, or they divided the costs for overlapping work so that only one-third of such fee and costs would be apportioned to each case. (Instruments No. 306-1 at 2; No. 306-10 at 2). Even after separating the hours spent in this case from the hours spent in the two related cases, MOGUS's counsel expended over 6,000 hours litigating this case since its inception.

### 4. The Professional Experience and Reputation of the Attorney

MOGUS's counsel submitted the affidavits of Paul J. Goodwine and Joelle F. Evans that briefly describe the experience of the attorneys who performed substantial work in this case. (*See* Instruments No. 306-1; No. 306-10). MOGUS's counsel did not submit any additional evidence about attorney qualifications or experience of the legal assistants. The affidavits show that the attorneys from Looper Goodwine and SEMM were experienced in the areas of the law related to this case.

### 5. The Weight of the Attorneys' Responsibilities

This factor is not applicable in this case.

### 6. The Measure of Success Achieved

Total contends that this Court should reduce MOGUS's requested award of attorneys' fees to reflect MOGUS's limited success at trial. (Instrument No. 316 at 8-9). Specifically, Total notes that although MOGUS sought a damages award of $33,066,695.36, the jury only awarded MOGUS $21,649,695.36 at trial. (Instrument No. 293). Total further contends that the "degree of success obtained" is the "most critical factor" in the court's determination of reasonable attorneys' fees and that MOGUS's "limited success" supports a reduction of the fee award. (Instrument No. 316 at 8-9 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Total fails to consider that throughout most of this case, Total asserted zero liability and at trial requested a jury verdict of less than $1 million for its share of the decommissioning costs. Moreover, many of the cases Total cites in support are inapplicable because those cases involved situations where the requested attorneys' fees substantially exceeded the amount of the jury verdict or judgment. *See e.g., Warranty Corp. v. Hans*, 2000 WL 284261, at *7 (S.D. Ala. Mar. 9, 2000) (request for attorneys' fees of $50,000 unreasonable where jury only awarded $15,000

7

in damages); *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (affirming 30% reduction of attorneys' fees to reflect a reasonable fee in light of jury's award of $1.00); *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (civil rights plaintiff who obtained only a nominal damages award of $1.00 on claim for $17 million was not entitled to attorneys' fees under statutory provision); *but see Devices, Inc. v. Senior Operations, Inc.*, 2009 WL 5171746, at *1 (N.D. Tex. Dec. 29, 2009) (reducing attorneys' fees from requested $33,690 to $26,952 where plaintiff obtained a judgment of only $41,305).

Total also improperly focuses on the Supreme Court's discussion in *Hensley v. Eckerhart* about the degree of success obtained where a plaintiff asserts multiple claims. 461 U.S. 424, 434-35 (1983). In this case, MOGUS's claims for relief involved a common core of facts on the MC 305 Operating Agreement requiring Total to pay its share of decommissioning costs. The only claim MOGUS asserted at trial was for damages. In this scenario the *Hensley* Court explains that "[s]uch a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. In analyzing the plaintiff's limited success, the "court necessarily has discretion in making this equitable judgment," and "[t]here is no precise rule or formula for making these determinations." *Id.* at 436-37.

The Court finds here that the significance of the overall relief the jury awarded to MOGUS warrants a slight reduction in MOGUS's fee award. MOGUS did not convince the jury to award it the entire $33 million in damages, but it was awarded a significant verdict of $21,649,695.36 at trial. This *Peebles* factor, therefore, weighs against the reasonableness of MOGUS's request for the entirety of its fees. The Court finds that a reasonable reduction for MOGUS's incomplete success at trial is a 20% reduction.

8

### 7. The Reasonable Expenses Incurred by the Attorneys

As discussed above, MOGUS's counsel claims it exercised good billing judgment by delegating certain assignments to legal assistants. Looper Goodwine and SEMM have also submitted charts showing the percentage of fees applied to different categories of work. (Instruments No. 306-1 at 8; No. 306-10 at 7-8). Those charts show that most fees applied to non-deposition discovery, depositions, summary judgment motions, pretrial order and trial preparation, and trial. Neither firm had extraordinary expenses in this litigation that support reducing the fee award.

### 8. Fixed or Contingent Fee

Both firms utilized a fixed fee arrangement. (Instrument No. 306 at 10).

### 9. The Nature and Length of the Professional Relationship with the Client

The Court finds that this factor is inapplicable.

### 10. The Fee Customarily Charged in the Locality for Similar Legal Services

The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998). The relevant locality for determining customary fees in this case is Houston. The firms' hourly rates support the reasonableness of the requested fee. Looper Goodwine billed hourly rates that ranged from $484.99 and $225.00 for attorneys and $100.00 for paralegals. SEMM billed hourly rates that ranged from $575.00 and $195.00 for attorneys and between $130.00 and $65.00 for paralegals. The Court finds that the rates charged by Looper Goodwine and SEMM are comparable with the hourly rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Apache Deepwater, LLC v. W&T Offshore, Inc.*, 2017 WL 6326141, at *7 (S.D.

9

Tex. May 31, 2017) (Hittner J.) (plugging and abandonment case under Louisiana law where hourly rates requested ranged from $746.50 to $125 per hour); *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 2017 WL 6942658, at *10-11 (S.D. Tex. Sept. 21, 2017) (Atlas, J.) (concluding that attorney hourly rates between $525 and $200, and that paralegal hourly rate of $175 were reasonable and customary for Houston); *cf. Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (in ADEA case brought in the Northern District of Texas, reduced hourly rates of $577.50, $542.50, and $280 were reasonable, customary rates).

**11. The Likelihood that Particular Employment Precludes Other Employment**

Looper Goodwine and SEMM represent that their representation of MOGUS in this case has precluded them from accepting additional business from other clients. (Instrument No. 306 at 9-10). The substantial number of hours spent on this case by MOGUS's counsel support this assertion.

**12. The Time Limitations Imposed by the Client or the Circumstances**

The Court finds this factor inapplicable.

Most of the *Peebles* factors are either neutral or substantially support the reasonableness of the award. However, MOGUS's limited success supports a downward adjustment to the fee award. MOGUS is entitled to recover its attorneys' fees with a 20% reduction. Accordingly, the Court awards MOGUS its reasonable attorneys' fees in the amount of $1,758,667.07.

**B. MOGUS's Costs**

MOGUS also requests an award of $629,524.27 in costs. (Instrument No. 306 at 11). The MC 305 Operating Agreement entitles MOGUS to recover costs. *See Apache Deepwater*, 2017 WL 6326141, at *5 (noting that costs recoverable under the contractual provisions can be broader than taxable costs covered by 28 U.S.C. § 1920). Total has made no counterarguments

respecting MOGUS's specific request for costs. The Court has reviewed the documentation MOGUS provided in support of its request for costs and finds that MOGUS is entitled to recover its costs in the amount of $629,524.27.

## II.

MOGUS moves to recover prejudgment and post-judgment interest. (Instrument No. 305). In its request for prejudgment interest, MOGUS requests that the Court award it prejudgment interest calculated from the date when MOGUS invoiced ATP. (Instrument No. 305 at 3). Total opposes MOGUS's request for prejudgment interest and post-judgment interest, arguing that it would be inequitable to allow MOGUS to recover fees and interest accrued before MOGUS provided Total a bill. (Instrument No. 316 at 5-7).

The MC 305 Operating Agreement provides that "each Party shall pay its proportion of all bills within fifteen (15) days of receipt date," and that if the party fails to pay within such time, the unpaid balance "shall bear interest . . . plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts." (Def. Trial Ex. 1 at p. 143). Interest does not begin to accrue until after each individual party fails to pay its proportion of all bills. Furthermore, the language of the agreement requires payment to be made within fifteen days of when the individual party *receives* a bill. MOGUS's contention that it should recover interest from when non-party ATP received the bill is inconsistent with the plain language of the MC 305 Operating Agreement. It is also inconsistent with Alabama law, which provides that prejudgment interest arising from a breach of contract case accrues from the date of the breach. Ala. Code § 8-8-8. The Court finds that prejudgment interest accrues from the date MOGUS first sent a bill to Total, not to ATP.

The record shows that MOGUS first sent a bill to Total on July 8, 2016. (*See* Instrument

11

No. 316-7). In that letter, MOGUS advised Total unequivocally that it was seeking payment for incurred costs associated with the decommissioning of the MC 305. *Id.* The letter states that Total is required to pay its proportionate share of the enclosed invoices relating to the MC 305 Wells within fifteen days of receipt of that letter. *Id.* at 3. The letter further states that failure to pay within the deadline would result in the accrual of interest on the unpaid balance as well as attorneys' fees and costs associated with the collection of the unpaid amounts. *Id.* As a result, Total's payment was due on July 23, 2016.

Although MOGUS contends that prejudgment interest should be calculated from the date ATP received a bill, MOGUS has provided the Court with an alternative calculation in the amount of $2,735,815.00 in prejudgment interest using the July 8, 2016, invoice date sent to Total. MOGUS's alternative date for calculating prejudgment interest utilizes the prejudgment interest rates provided in the MC 305 Operating Agreement. (Instruments No. 305-1, Oscar Hartman Decl.; No. 305 at 3). This alternative calculation of prejudgment interested is also based upon the jury verdict. Accordingly, the Court awards MOGUS its prejudgment interest in the amount of $2,735,815.00 through April 22, 2019.

MOGUS is also entitled to post-judgment interest calculated in accordance with 28 U.S.C. § 1961. Accordingly, MOGUS is awarded post-judgment interest at the rate of 2.43% from the date of the final judgment until Total satisfies the judgment.

### III.

For the foregoing reasons **IT IS HEREBY ORDERED** that MOGUS's Motion for Attorneys' Fees and Costs, **(Instrument No. 306)**, and its Motion for Prejudgment and Post-Judgment Interest, **(Instrument No. 305)**, are **GRANTED**.

**IT IS FURTHER ORDERED** that MOGUS shall recover its attorneys' fees pursuant to the MC 305 Operating Agreement in the amount of $1,758,667.07. MOGUS shall recover its costs in the amount of $629,524.27.

**IT IS FURTHER ORDERED** that MOGUS shall recover prejudgment interest in the amount of $2,735,815.00 through April 22, 2019, and post-judgment interest at the rate of 2.43% from the date of the final judgment until Total satisfies the judgment.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the 2nd day of April, 2019, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**